The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| TRINITY GLASS INTERNATIONAL, INC., a Washington corporation<br>　　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br><br><br><br>BURNS, MORRIS & STEWART LIMITED PARTNERSHIP, a Texas limited partnership,<br>　　　　　　　　　Defendant. | NO. 04-5330 RJB<br><br>DEFENDANT'S REPLY BRIEF TO THE CLAIM CONSTRUCTION BRIEF OF PLAINTIFF TRINITY GLASS INTERNATIONAL, INC. |

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB)

## I.  INTRODUCTION

Trinity desires to "have their cake and eat it too" with their claim construction approach. First, Trinity argues that BMS should be prohibited under the doctrine of collateral estoppel from arguing any definition of "integrally formed" other than the one adopted by Judge Clark in Burns, Morris & Stewart, LP v. Endura Products, Inc. (Case No. 9:04CV23; hereinafter "Endura").  Next, Trinity asserts that it should have the unopposed right to assert any definition it so desires without any objection or argument from BMS.  Collateral estoppel does not apply in the present matter and Trinity's claim construction arguments ignore fundamental tenets of claim construction jurisprudence.

## II.  ARGUMENT

### A.  Collateral Estoppel Does Not Apply

In the Ninth Circuit three factors are considered in applying collateral estoppel: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." McQuillion v. Schwarzennegger, 369 F.3d 1091, 1096 (9th Cir. 2004).   In discussing the application of issue preclusion (also called collateral estoppel), the Federal Circuit has held that "judicial statements regarding the scope of patent claims are entitled to collateral estoppel effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement." A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 704 (Fed. Cir. 1983).

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 1

Trinity avers that Judge Clark's Markman ruling is "a final ruling necessary to support a judgment on the merits." To support their contention, Trinity relies on the holding in <u>TM Patents, LP v. International Business Machines Corp</u>., 72 F. Supp. 2d 370 (S.D.N.Y. 1999) ("TM Patents") wherein the court held the construction of claim terms in a prior case (<u>TM Patents v. EMC Corp.</u>, Civil Action No. 98-10206 (D. Mass. Jan 27, 1999) ("EMC"), which was dismissed with prejudice prior to trial and without vacation of the Markman Order, were sufficiently final to permit application of collateral estoppel – even though the matter to which they were necessary was never reduced to a final judgment after verdict." <u>Id.</u> at 377. In determining that Judge Young's Markman Order in EMC had estoppel effect, the court in TM Patents noted that:

> "…the only reason Judge Young's conclusions were not reviewed on appeal is that the case was settled. A party who cuts off his right to review by settling a disputed matter cannot complain that the question was never reviewed on appeal. The Markman rulings were not vacated as part of the settlement. They therefore remain preclusive." <u>Id.</u> at 378.

The Endura litigation has not concluded. Judge Clark's Markman order is an interlocutory decision that may be revisited prior to the final disposition of that matter. The parties have not reached settlement and the case remains on Judge Clark's docket. This is a distinguishing difference between TM Patents and Endura. Although Trinity contends that BMS had a full and fair opportunity to litigate the meaning of "integrally formed", Trinity fails to recognize that neither party has lost their ability to appeal the Markman decision as the Endura litigation is on-going. Contrary to Trinity's assertion, the facts in TM Patents support the Markman order as being a final ruling - the suit was dismissed with prejudice and no motion to vacate the Markman order was filed – as neither party to that action retained any ability for appellate review of the Markman order. Given the remaining options of appeal and vacating the

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 2

Markman order in Endura, the facts of TM Patents do not align themselves to mandate application of collateral estoppel in the present case.  As the Texas Court presided over by Judge Clark has not yet reached a decision as to the patent infringement claim, the Markman order could not prove critical or necessary to a non-existent final judgment, and thus, collateral estoppel cannot apply to prevent BMS from advocating a different definition of "integrally formed" than found in Judge Clark's Markman order.

Should collateral estoppel not apply, Trinity argues in the alternative that this Court should follow Judge Clark's claim construction of integrally formed under principles of *stare decisis* and judicial economy.  However, the present court is not bound by *stare decisis* to follow the decisions of a district court judge in Texas.  As stated above, the Markman decision by Judge Clark is a non-final interlocutory order.  While it may be persuasive, it certainly is not binding.

Finally, and in any event, since Trinity has elected to argue its own definition of "integrally formed," BMS should likewise not be estopped from advocating that the intrinsic record supports a definition other than the one given by Judge Clark or Trinity.

**B.     The Scope and Support Of "Integrally Formed"**

The table below provides the definition offered by Judge Clark and the parties:

|  | **Judge Clark's Definition** | **BMS Definition** | **Trinity Definition** |
|---|---|---|---|
| Integrally Formed | Connected together so as to make up a single complete piece or unit, or so as to work together as a single complete piece or unit, and so as to be incapable | Connected together so as to make up a single complete piece or unit, or so as to work together as a | Connected together so as to make up a single complete piece or unit, or so as to work together as a single complete piece or unit, and so as to be incapable of being easily dismantled without destroying the |

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 3

| | of being easily dismantled without destroying the integrity of the piece or unit. Ex. A at page 14.[1] | single complete piece or unit. | integrity of the piece or unit or of one or both of the constituent portions making up the piece or unit, and such that the constituent portions making up the piece or unit have the same peripheral contour. |
|---|---|---|---|

At the core of each definition discussed herein, whether advanced by a party to the present action or construed by Judge Clark, is that "integrally formed" means at least:

> ***Connected together so as to make up a single complete piece or unit, or so as to work together as a single complete piece or unit.***

Trinity argues that the claim scope should be limited such that the constituent portions of the jambs (the upper and lower portions) have the same peripheral contour and that the connection of the two portions should be such that if disassembled, the integrity of the constituent pieces is somehow degraded. However, there are no words or expressions of manifest exclusion in the intrinsic record to support these limitations.

**C.     Trinity's Proposed Limitations Are Not Supported by the Intrinsic Record**

Although the court may use the written description for enlightenment, it may not read a limitation from the specification into the claim term. Comark Communications v. Harris Corp., 156 F.3d 1182, 1186-87 (Fed. Cir. 1998). "[I]t is axiomatic that claims, not the specification embodiments, define the scope of protection." Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1378 (Fed. Cir. 2001) (internal citation omitted). And even where a patent describes only a single embodiment, claims will not be "read restrictively unless the patentee has

---

[1] As referenced herein, Exhibits A, B, and C refer, respectively to Exhibits A, B and C of "Defendant Burns, Morris & Stewart's Markman Brief on the Interpretation of Disputed Claim Language in the Claims of U.S. Patent No. 5,873,209.

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 4

demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" Liebel-Flarsheim, 358 F.3d at 906 (quoting Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002).

"Words or expressions of manifest exclusion or explicit disclaimers in the specification are necessary to disavow claim scope. Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367 (Fed. Cir., 2005) (Finding that "[d]espite the numerous cites to three-bladed razors plucked from the written description, no statement in the patent surrenders or excludes a four-bladed razor" and holding that "[t]his court declines to import limitations to the claims from the specification absent a "manifest" or "explicit" exclusion.).

### 1) Trinity's Proposed Limitation About Destruction Of Integrity is Not Supported by the Intrinsic Record

Although Trinity spends considerable effort and argument in an attempt to equate "integrally formed" with a permanent joint or a joint without screws, their proposed definition does not include the word "permanent." Trinity's first limitation; that the integrity of one or both of the constituent portions making up the piece or unit are not alternatively destroyed when the pieces or unit is dismantled, seems an attempt to shoe-horn permanency or the lack of screws or other fasteners into the definition; however the limitation does not clarify Judge Clark's construction but rather distorts it.

Judge Clark's construction of "integrally formed" does not require absolute permanency between the upper and lower portions. Rather, he indicated that the frame should be "relatively permanent," i.e. incapable of being easily dismantled. As Judge Clark noted, the patent…

> …indicate[s] that connections other than finger joints may be used. The fact that the preferred embodiment happens to use finger joints does not import that limitation in the claim language. While these references would

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 5

   not broaden the claim language to allow an easily disassembled jamb, or a structure composed of interchangeable parts, they also do not limit the claim to joints without metal fasteners. For example metal dowel rods or screws might be inserted in the end of a durable portion, running parallel to the portion into the end of the wooden portion to strengthen the glued joint. Other possibilities could be contemplated to form a joint that was relatively permanent. Ex. A at page 14.

Integrally formed is the term used to describe the joinder of the upper and lower portions of the side jamb. Judge Clark recognized this - noting that dowel rods or screws may be used.[2]

The specification of the '209 patent is notably silent about any limitations on the side jambs, or the upper and lower portions were they disassembled. One could conceive many characteristics a side jamb might have if disassembled. For example, one could construct the hypothetical limitation: "wherein the disassembled constituent components are capable of being shipped in one package"; however, as with Trinity's proposed limitation regarding disassembly, this limitation is unsupported. As Trinity's limitation is not supported by explicit disclaimers in the intrinsic record, this court should not adopt Trinity's proposed definition.

   **2)  The Intrinsic Record Does Not Support Requiring the Upper
       And Lower Portion Having the Same Peripheral Contour**

Trinity's second limitation; that the constituent portions making up the piece or unit have the same peripheral contour, is an overstatement of the disclosure of the '209 patent and its' prosecution history. The intrinsic record does not support Trinity's position.

---

[2] Trinity's argument relating to new matter in the specification of the '209 patent is unavailing. The specification of the '943 parent patent states "it should be understood that other wood joints are contemplated such as edge gluing or their equivalents." See Col. 2, ll. 62- 65. Also, the Examiner of the '209 patent did not view the disclosure of the '209 specification as exceeding the scope of the '943 specification. Ex. C, part 1, page 39 (page 5 of the Office Action mailed February 13, 1998).

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 6

Although the '209 patent discloses, by way of a preferred embodiment shown in Figure 1, a frame wherein the upper and lower portions have a similar cross section and size - there is no limitation restricting claim 1 to frames wherein the upper and lower portions have a similar cross-sectional shape.  In proposing such language, Trinity distorts the disclosure of the '209 patent when they state that the "resulting component will be capable of being 'shaped using conventional wood processing techniques'." *See* Claim Construction Brief of Trinity Glass at page 28.  The impression Trinity works so diligently to make is that the side jamb formed by joining the upper and lower portion must be subsequently capable of being passed through a milling machine.  However, as used in the '209 patent, this passage refers to the ability of a preferred material used for the lower portion (a wood-based product such as STRANDEX®, ERT®, or TREX®) to be shaped by conventional wood processing techniques – thereby allowing those embodiments using this material to be so processed.  Ex. B at Col. 2, ll. 49 – 52.

Contrary to Trinity's misplaced assertion, there is no requirement in claim 1 that the side jamb is subsequently passed through a milling machine after joining the lower portion and upper portion.  In fact, claim 1 is silent as to how the upper and lower portions are fabricated.  This permits claim 1 to read upon frames wherein the upper portion and lower portion are completely and independently fabricated – irrespective of their individual cross-sectional shapes.  That one embodiment of the present invention includes subsequent milling after formation of the side jamb should not limit the invention to only those embodiments wherein efficient mass production processes dictate and cost savings quantify the benefit of imparting shape to the side jamb as a whole rather than to the constituent components individually.

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 7

Furthermore, Trinity's proposed limitation ignores the disclosure of the '209 patent which clearly shows that the side jamb does in fact have regions with dissimilar cross-sectional shapes. For example, the hinge recesses 4 shown in Figure 1 impart a different cross-sectional shape than those areas of the side jamb between the hinge recesses. Ex. B at Fig. 1. Additionally, a portion of the lower end of the side jamb may be removed to create a joining region for sill plate attachment to the side jamb. Such a region could easily have a different cross-sectional shape than the upper portion.

Finally, BMS did not limit claim scope during prosecution with manifest expressions that the upper and lower portions have the same peripheral contour. Accordingly Trinity's proposed limitation to that effect, should not be allowed.

**D.    BMS's Definition is Not Inconsistent with this Court's Prior Construction of the Phrase "Integrally Formed"**

This Court had occasion to assess the meaning of "integrally formed" in context of plastic single-piece roof ventilators in <u>Noll Mfg. Co. v. Fresh Air Mfg. Co</u>, Case No. C03-5484RJB (Decided April 20, 2004), which construed U.S. Patent No. 5,622,522. In that matter the Court held on three occasions that "integrally formed" meant that two pieces were affixed to form a "whole unit", "one continuous, physically combined structure", and "affixed to the base member through connecting means to form one whole unit." *See* Ex. Q from Claim Construction Brief of Trinity Glass at 5, 6, and 7. The invention in the '522 patent is an exhaust vent made from a single piece of plastic wherein a tubular member is connected to a base member in a seamless manner. The '522 patent indicates that vent is manufactured as a single plastic unit via injection molding. Ex. F at Col. 7, ll. 44-59.    As disclosed in the '522 patent, the…

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 8

>…novel molded plastic ventilator varies from those prior art vents in that (1) the tubular member provided for flow of gases to the outside and (2) the base for mounting the vent, are *combined into a single one-piece base of molded*, preferably plastic construction.  Also, it is preferable that the tubular member is *molded simultaneously* with the base, rather than glued, so that the base and tubular member assembly comprise not only a sealed tubular member, but provide a single, seamless part. Ex. F at Col. 2, ll. 16 – 25. (Emphasis added).

Unlike the invention in the '522 patent, the frames described in the '209 patent are constructed from jambs having upper and lower portions that are different and distinguishable materials.   For example in the asserted claim, the upper portion of the jamb is wood and the lower portion is plastic.   Accordingly, the jambs of the '209 patent could not be formed by an injection molding process.

As stated above, BMS advocates the following definition.

> ***Connected together so as to make up a single complete piece or unit, or so as to work together as a single complete piece or unit.***

Aside from the distinguishing feature that the vent in the '522 relates to one material and jambs in the '209 patent relate to two materials, the use of the "integrally formed" in the '522 patent to mean "whole unit" or  "a combined structure"  is consistent with BMS' proposed definition of "integrally formed."

**E.     BMS's Proposed Definition for "Integrally Formed" is Fully Supported**

BMS's proposed definition for "integrally formed" - connected together so as to make up a single complete piece or unit, or so as to work together as a single complete piece or unit - is fully supported by the disclosure of the '209 patent.  The "Background of the Invention" describes finger-joining small pieces of wood and joining them "end to end to produce a single long piece…." Ex. B at Col. 1, ll. 47 – 48.  The specification also states that the wood and

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 9

durable portions are "connected end to end with a glued finger joint or other mechanical connection to assemble the component." Ex. B, Col. 2, ll. 6- 7.  The specification further states that the assembly of the wood portion with the durable portion "forms a complete side jamb 1 or 2." Ex B at Col. 3, ll. 13.  As noted by Judge Clark, the specification supports "a definition that the wooden portion and the durable portion are put together to form a single piece or unit, which is intended to be used like the single piece of lumber formerly used for door jambs."  Ex. A at page 12.  Accordingly, BMS respectfully submits that their definition should be properly adopted by this Court.

### III.     CONCLUSION

For the reasons stated above, BMS respectfully requests that the Court reject Trinity's proposed construction of the term "integrally formed" as used in the '209 patent and instead adopt the following construction:

> ***Connected together so as to make up a single complete piece or unit, or so as to work together as a single complete piece or unit.***

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 10

DATED this 13th day of June, 2005.

Respectfully submitted:

Standley Law Group LLP
Attorneys for Defendant Burns, Morris &
Stewart Limited Partnership

<u>By</u>     /s/F. Michael Speed, Jr./
         Jeffrey S. Standley
         F. Michael Speed, Jr.

495 Metro Place South, Suite 210
Dublin, Ohio 43017
(614) 792-5555
(614) 792-5536 FAX
Email: jstandley@standleyllp.com
Email: mspeed@standleyllp.com

Timothy Ashcraft
Williams Kastner & Gibbs
1301 A Street
Suite 200
Tacoma, WA 98401-1157
(253) 593-5620
(253) 593-5625
Email: tashcraft@wkg.com
Counsel for Defendant

DEFENDANT'S REPLY BRIEF
TO THE CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF TRINITY GLASS
INTERNATIONAL, INC.
(C04-5330RJB) - 11

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2005, a true and accurate copy of DEFENDANT'S REPLY BRIEF TO THE CLAIM CONSTRUCTION BRIEF OF PLAINTIFF TRINITY GLASS INTERNATIONAL, INC. was served via regular U.S. mail, postage prepaid on the following counsel:

Stuart R. Dunwoody
Charles S. Wright
DAVIS WRIGHT TREMAINE LLP
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688

                                /s/ F. Michael Speed, Jr.
                                F. Michael Speed, Jr.