The Honorable Robert J. Bryan

1

2

3

4

5

6            UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
7                    AT SEATTLE

8   TRINITY GLASS INTERNATIONAL, INC., a   )
    Washington corporation,                )
                                           )   No. C04-5330 RJB
9                      Plaintiff,           )
                                           )   MOTION FOR SUMMARY
10            v.                            )   JUDGMENT OF
                                           )   NONINFRINGEMENT
11  BURNS, MORRIS & STEWART LIMITED        )
    PARTNERSHIP, a Texas limited partnership, )  **Note on Motion Calendar:**
12                                         )   **August 26, 2005**
                       Defendant.          )
13                                         )   **ORAL ARGUMENT**
    _____)   **REQUESTED**

14

15       Now that the terms in the sole patent claim at issue in this case have been

16  construed, it is clear that the fiberglass exterior door system of plaintiff, Trinity Glass

17  International, Inc., does not infringe that patent claim, either literally or under the doctrine

    of equivalents, for at least two reasons. First, Trinity Glass's product does not have "side
18
    jambs having upper and lower portions."  Second, even if side jambs in Trinity Glass's
19
    product were improperly deemed to have upper and lower portions, they are not "integrally
20
    formed."  Trinity Glass therefore respectfully requests that the Court enter a summary
21
    judgment, declaring that Trinity Glass's product does not infringe Claim 2 of U.S. Patent
22
    No. 5, 873,209, dismissing the infringement counterclaims with prejudice, and terminating
23
    this litigation.

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 1

SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

# I.   FACTUAL BACKGROUND

## A.   BMS's Infringement Contention.

Defendant, Burns Morris & Stewart Limited Partnership ("BMS"), contends that Trinity Glass's fiberglass exterior door system infringes just one patent claim, Claim 2 of the '209 Patent.  Because that claim depends from Claim 1, the infringement analysis requires consideration of both Claims 1 and 2 of the '209 Patent.  They read as follows:

> 1.    A frame, comprising:
>
> a top jamb;
>
> two side jambs having upper and lower portions that are integrally formed, said upper portion being made of wood, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.
>
> 2.    The frame of claim 1, wherein said second material is plastic.

Corrected Appendix to Claim Construction Brief of Trinity Glass (Dkt. No. 71) Ex. A at 4, col. 3, lines 43-51.

## B.   Trinity Glass's Fiberglass Exterior Door System.

Trinity Glass's fiberglass exterior door system is described in the Declaration of Peter Sibbett.  It consists of a fiberglass door that is pre-hung in a wooden door frame that is connected to an adjustable door sill and threshold.  Sibbett Decl., ¶ 2.

The side jambs in the door frame in Trinity Glass's fiberglass exterior door system are made entirely of wood.  They do not have upper and lower portions made of different materials. *Id.*, ¶ 3.

Trinity Glass attaches a small plastic piece, called a "sill key," to each side of the sill, and attaches the a side jamb to each sill key.  The sill key is not part of either the side

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 2
SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

jamb or of the door sill.  Rather, it is a separate piece that is connected to both a side jamb

on its top face and to the sill on one of its side faces.  *Id.*, ¶ 4.

The sill key itself is shown below in the drawing on the left.  The drawing on the

right shows the sill key (reference no. 106) attached to the sill (reference no. 110) and to

the side jamb of the door frame (reference no. 104).

 

The sill key has two members, called tenons, that project vertically from its top

face and that fit into slots, also called mortises, cut into the bottom of the side jamb.  It is

connected to the side jamb with two screws that are driven from the bottom of the sill key

into the end of the side jamb.  No glue or other adhesive is applied to the interface between

the sill key and the side jamb.  *Id.*, ¶ 8.

The sill key and side jamb are not permanently attached to each other.  The sill key

can be removed from the side jamb by simply backing out the two screws that connect it to

the side jamb and then, if necessary, applying gentle downward pressure to disengage the

tenons on the sill key from the mortises in the side jamb.  A sill key that has been attached

to a side jamb can be removed from the side jamb in this manner without in any way

damaging or affecting the integrity of either the side jamb or the sill key.  After the sill key

and side jamb have been disconnected, both pieces can be reused in other applications.

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 3

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1   The sill key can be connected to another side jamb and sill, and the side jamb can be

2   connected to another sill key.  *Id.*, ¶ 9.  One of the photographs that BMS has included in

3   its infringement contentions shows a sill key that has been separated from a side jamb,

4   thereby confirming that the sill key and side jamb are not permanently connected and can

5   be dismantled without destroying the integrity of either the sill key or the side jamb.

6   Declaration of Stuart R. Dunwoody in Supp. of Mot. for Summ. J. (Dkt. No. 36, filed

7   March 17, 2005), Ex. C at 13; Sibbett Decl., ¶ 10.

8                              **II.     ARGUMENT**

9        **A.     BMS Cannot Meet its Burden on Summary Judgment.**

10       The party asserting infringement bears the burden of proving that each and every

11  element of the asserted patent claims is found in the accused device, either literally or by

12  an equivalent.  *E.g., Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

13  A defendant may carry its initial burden on a summary judgment motion by "'showing' –

14  that is, pointing out to the district court – that there is an absence of evidence to support the

15  nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden

16  then shifts to the plaintiff to "make a showing sufficient to establish the existence of an

17  element essential to that party's case, and on which that party will bear the burden of proof

18  at trial."  *Id.* at 322.  In making that showing, the plaintiff "must do more than simply show

19  that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.*

20  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, it "must come forward with

21  'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 586-87 (citation

22  omitted).  Where the record taken as a whole could not lead a rational trier of fact to find

23

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 4
SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1  for the nonmoving party, there is no genuine issue for trial, and summary judgment should

2  be granted.  *Id.* at 587.

   **B.    BMS Cannot Prove Literal Infringement of the '396 Patent.**

4      "To establish literal infringement, every limitation set forth in a claim must be

5  found in an accused product, exactly."  *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d

6  1570, 1575 (Fed. Cir. 1995).  At the least, BMS cannot prove that two elements of Claim 1

7  are present in Trinity Glass's fiberglass exterior door product, namely "[1] two side jambs

8  having upper and lower portions that [2] are integrally formed."

   **1.    The Side Jambs on Trinity Glass's Product Do Not Have Upper
           and Lower Portions.**

11      Trinity Glass's product does not have "two side jambs having upper and lower

   portions."  A side jamb is defined as "one of two vertical members of a frame that are

   spaced apart from one another and are each connected to a top jamb."  *See* BMS Opening

   Markman Brief (Dkt. No. 57) at 15-16.[1]  The side jambs in Trinity Glass's fiberglass

   exterior door system are made entirely of wood.  They do not have upper and lower

   portions made of different materials.  Sibbett Decl., ¶ 3.  BMS argues that the sill key is the

   lower portion of the side jamb.  Dunwoody Decl. (Dkt. No. 36), Ex. C at 11 Fig. 3.  But the

   sill key is a separate piece that is attached to both the side jamb and the sill but is not part

   of either those items.  Sibbett Decl., ¶ 4.

20      Trinity Glass's fiberglass exterior door system therefore does not have the "two

   side jambs having upper and lower portions" element of Claim 1 of the '209 Patent.

---

[1] The Court has construed "integrally formed", Minute Order (Dkt. No. 75) at 1.  The
parties have agreed on the construction of the remaining claim terms; those definitions are
listed in BMS's Opening Markman Brief (Dkt. No. 57) at 15-16.

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 5

SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1

2

        **2.**       **Even If the Sill Key Is Improperly Deemed to Be the Lower Portion of the Side Jamb, It Is not Integrally Formed with the Side Jamb.**

3           Even if the Court were to accept BMS's argument that the wooden side jamb in

4  Trinity Glass's product is actually just the upper portion of the side jamb, and that the sill

5  key is the lower portion of the side jamb, BMS still could not establish literal infringement,

6  because the wooden side jamb and the sill key are not "integrally formed" as Claim 1

7  requires.

8           This Court has construed "integrally formed" to mean

9

10

> ***permanently connected together*** so as to make up a single complete piece or unit, ***so as to be incapable of being dismantled without destroying the integrity of*** the piece or unit and/or ***one or both of the constituent portions***

11

12  Minute Order (Dkt. No. 75) at 1 (emphasis added).  The sill key and wooden side jamb are

13  not "integrally formed" under this definition, for they are not permanently connected

14  together, and can be dismantled without in any way damaging or affecting the integrity of

15  either the side jamb or the sill key.

16           The sill key is attached to the wooden side jamb with two screws but without any

17  glue or adhesive.  It can be removed from the side jamb by simply backing out the two

18  screws and then applying gentle downward pressure to it.  After the sill key has been

19  removed from the side jamb in this manner, both pieces can be reused in other

20  applications.  BMS itself has demonstrated this, for it included in its infringement

21  contentions a photograph showing a sill key that has been separated from the side jamb

22  without affecting the integrity of either piece.  Dunwoody Decl. (Dkt. No. 36), Ex. C at 13;

23  Sibbett Decl., ¶ 10.

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 6
SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    BMS thus cannot establish literal infringement of the "integrally formed" element

2    of Claim 1, as construed by this Court.

3    **C.      BMS Cannot Prove Infringement of the '396 Patent Under the Doctrine
              of Equivalents.**

4         BMS also cannot establish infringement under the doctrine of equivalents.  To

5    prove infringement by equivalents, BMS must show that Trinity Glass's fiberglass exterior

6    door system "contain[s] elements identical or equivalent to each claimed element of the

7    patented invention."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40

8    (1997).[2]

9         "[T]he doctrine of equivalents is *limited*."  *K-2 Corp. v. Salomon S.A.*, 191 F.3d

10   1356, 1366-67 (Fed. Cir, 1999) (emphasis original).  "[T]he doctrine of equivalents is not a

11   license to ignore or 'erase . . . structural and functional limitations of the claim,' limitations

12   'on which the public is entitled to rely in avoiding infringement'."  *Athletic Alternatives, Inc.*

13   *v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) (quoting *Perkin-Elmer Corp. v.*

14   *Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987)).  Rather, the doctrine of

15   equivalents has the more limited role of "prevent[ing] an accused infringer from avoiding

16   infringement by changing only minor or insubstantial details of a claimed invention while

17

18

---

19   [2] Courts frequently grant summary judgment of noninfringement under the doctrine of

20   equivalents.  *See*, *e.g.*, *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314 (Fed. Cir.
     2001) (affirming summary judgment of noninfringement under the doctrine of

21   equivalents); *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1354-56 (Fed. Cir. 1998) (same);
     *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1467 (Fed. Cir. 1998) (same).

22   "Where the evidence is such that no reasonable jury could determine two elements to be
     equivalent, district courts are *obliged* to grant partial or complete summary judgment."

23   *Sage Prods., Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997) (quoting
     *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997) (emphasis
     added)).

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 7

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1   retaining their essential functionality." *Sage Prods., Inc. v. Devon Industries, Inc.*, 126

2   F.3d 1420, 1424 (Fed. Cir. 1997).

3        Courts have placed numerous limitations on the doctrine of equivalents. *See K-2*,

4   191 F.3d at 1366-68.  At least three apply here.  First, "the doctrine of equivalents cannot

5   allow a patent to encompass subject matter existing in the prior art." *Id.* at 1367.  Second,

6   under what is known as the "all elements rule," "there can be no infringement under the

7   doctrine of equivalents if even one element of a claim or its equivalent is not present in the

8   accused device." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321

9   (Fed. Cir. 2003).  Third, under the rule of prosecution history estoppel, a patentee may not

10  reclaim through the doctrine of equivalents subject matter that he disclaimed during

11  prosecution of the patent application.  *K-2*, 191 F.3d at 1367.  These limitations on the

12  doctrine of equivalents are questions of law.  *Id.* at 1367-68.

13       Each of these three limitations precludes application of the doctrine of equivalents

14  here.  But even if the doctrine of equivalents did apply here, Trinity Glass's product does

15  not meet the test for "insubstantial differences" from BMS's claimed invention, and there

16  is no infringement by equivalents.

17             **1.    Finding Infringement Under the Doctrine of Equivalents Would
                        Improperly Cause Claim 2 to Encompass the Prior Art.**
18

19       "[T]here can be no infringement under the doctrine of equivalents if the asserted

20  scope of equivalency would encompass the prior art." *DeMarini Sports, Inc. v. Worth,*

    *Inc.*, 239 F.3d 1314, 1332 (Fed. Cir. 2001).  The common-sense basis for this rule is that "a

21  patentee should not be able to obtain, under the doctrine of equivalents, coverage which he

22  could not lawfully have obtained from the PTO by literal claims. . . . Thus, since prior art

23  always limits what an inventor could have claimed, it limits the range of permissible

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 8
SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1   equivalents of a claim." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904

2   F.2d 677, 684 (Fed. Cir.), *cert. denied*, 498 U.S. 992 (1990).

3       As is shown in the concurrently-filed Renewed Motion for Summary Judgment of

4   Invalidity, a wooden side jamb that is detachably joined to a non-wooden base is found in

5   at least five prior art references:  U.K. Patent GB 2,112,437A, U.S. Patent No. 5,136,814,

6   Japanese Patent Application No. 07-91142, Japanese Patent Application No. 04-174186,

7   and Japanese Utility Model Application No. 61-90978.  See Renewed Motion for

8   Summary Judgment of Invalidity at 11-19.

9       BMS has the burden of proving "that the range of equivalents which it seeks would

10  not ensnare the prior art." *Wilson*, 904 F.2d at 685.  It cannot do so.  If Trinity Glass's

11  one-piece wood side jamb is deemed the equivalent of the "side jambs having upper and

12  lower portions" claim element, or if (assuming that the sill key is improperly viewed as the

13  lower portion of the side jamb) the detachably joined sill key and wood side jamb are

14  deemed the equivalent of the "integrally formed" claim element, then Claims 1 and 2 of the

15  '209 Patent will encompass the prior art described above.

16      *K2* illustrates this.  The Federal Circuit in that case rejected the patentee's argument

17  that a removable screw in the allegedly infringing product was equivalent to a claim

18  limitation requiring a "permanently affixed" component.  The court held that because the

19  removable screw was at most an obvious variation of several prior art references, the

20  doctrine of equivalents could not expand the scope of the claim to encompass the

21  removable screw.  "To hold otherwise would allow the '466 patent, through the doctrine of

22  equivalents, to cover subject matter that could not have been legally patented in the first

23  instance."  191 F.3d at 1368.  *See also Wilson*, 904 F.2d at 685-86 (reversing judgment of

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 9
SEA 1674828v1 48522-29

1   infringement by equivalents because the asserted range of equivalents encompassed the

2   prior art).

3        Application of the doctrine of equivalents therefore is precluded by the prior art.

4       **2.**     **Finding Infringement Under the Doctrine of Equivalents Would**
               **Violate the All Elements Rule by Eliminating the "Upper and**

5                  **Lower Portions" and "Integrally Formed" Claim Limitations.**

6        Applying the doctrine of equivalents broadly enough to encompass Trinity Glass's

7   product also would violate the all elements rule by removing the "upper and lower

8   portions" and "integrally formed" claim limitations of Claim 1 in their entirety.

9        The all elements rule stems from the principle that "[e]ach element contained in a

10   patent claim is deemed material to defining the scope of the patented invention." *Warner-*

11   *Jenkinson*, 520 U.S. at 29.  Each and every claim limitation therefore must still be present

12   in the accused device in order to find infringement, even if one of those elements is present

13   through an equivalent: "It is important to ensure that the application of the doctrine [of

14   equivalents], even as to an individual element, is not allowed such broad play as to

15   effectively eliminate that element in its entirety." *Id.*

16        *Sage Products* illustrates the application of this rule.  The Federal Circuit there

17   rejected the patentee's assertion that two constrictions below the top of the accused device

18   were equivalent to the claim limitations that required one constriction ***above*** and a second

19   constriction ***below*** the top of the container, holding that "the doctrine of equivalents does not

20   grant Sage license to remove entirely the 'top of the container' and 'over said slot'

21   limitations from the claim." *Sage Prods.*, 126 F.3d at 1424.  The rationale underlying the

22   holding in *Sage Products* is that the doctrine of equivalents cannot be applied so broadly as

23   to vitiate the public notice function of the claims: "[F]or a patentee who has claimed an

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 10
SEA 1674828v1 48522-29

1  invention narrowly, there may not be infringement under the doctrine of equivalents . . . .  If

2  it were otherwise, then claims would be reduced to functional abstracts, devoid of

3  meaningful structural limitations on which the public could rely."  *Id.*  "Because this issued

4  patent contains clear structural limitations, the public has a right to rely on those limits in

5  conducting its business activities."  *Id.* at 1425.  *See also Lockheed Martin,* 324 F.3d at 321

6  (no infringement under doctrine of equivalents because a finding of equivalence would

7  vitiate a claim limitation).

8       The facts of this case compel the same result as in *Sage Products*:  deeming the

9  one-piece side jamb of Trinity Glass's fiberglass exterior door system to be equivalent to

10 the "side jamb having upper and lower portions" limitation of Claim 1, and deeming the

11 detachable sill key that can be removed without destroying the integrity of it or the wooden

12 side jamb to be equivalent to the "integrally formed" limitation, which requires pieces that

13 are "permanently connected together," would vitiate those claim limitations entirely.  The

14 public should be able to rely on these clear claim limitations in conducting their business

15 activities.  As in *Sage Products*, a finding of equivalence here would completely and

16 impermissibly vitiate the "upper and lower portions" and "integrally formed" limitations

17 from the claims and deprive the public of the notice function of the claims.

18      The all elements rule precludes a finding of infringement under the doctrine of

19 equivalents as a matter of law.

20       **3.      Prosecution History Estoppel Precludes a Finding of
               Infringement under the Doctrine of Equivalents.**

21      Prosecution history estoppel also prevents a finding that the "integrally formed"

22 limitation is present under the doctrine of equivalents, because that claim element was

23 added by narrowing amendment during prosecution of the parent to the '209 Patent.

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 11
SEA 1674828v1 48522-29

1   "[W]hen the patentee has chosen to narrow a claim [during prosecution], courts may

2   presume . . . that the territory surrendered is not an equivalent of the territory claimed."

3   *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002) (*Festo I*).

4          During prosecution of the parent '943 Patent, the patent examiner issued a final

5   rejection of the application because of the Raynak and Hsu patents.  In response, the

6   applicant, BMS's Richard Hagel, amended Claim 1 to replace the earlier and broader "two

7   side jambs having upper and lower portions" with the current narrower claim language:

8   "two side jambs having upper and lower portions *that are integrally formed*".  *Compare*

9   Corrected Appendix to Claim Construction Brief of Trinity Glass (Dkt No. 71) Ex. C at 59

10  (claim language before amendment) with *id.* at 68 (amendment adding "integrally

11  formed").  By making this amendment, Hagel and BMS surrendered the territory between

12  "two side jambs having upper and lower portions" and "two side jambs having upper and

13  lower portions *that are integrally formed*."

14         Prosecution history estoppel applies to any narrowing amendment that is "made for

15  a substantial reason relating to patentability."  *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*

16  *Co.*, 344 F.3d 1359 (Fed. Cir. 2003), *cert. denied*, 541 U.S. 988 (2004) (*Festo II*).  The

17  "integrally formed" amendment clearly satisfies that criterion: Hagel made it in response to

18  a final rejection for anticipation and obviousness under 35 U.S.C. §§ 102 and 103, and as

19  soon as the amendment was made, the claims of the '943 patent were allowed to issue.  *See*

20  Corrected Appendix to Claim Construction Brief of Trinity Glass (Dkt No. 71) Ex. C at

21  51-56, 67-68.  Alternatively, when the prosecution history reveals no reason for a

22  narrowing amendment, it is presumed that the amendment was made for a substantial

23  reason relating to patentability, and the patent owner may rebut that presumption only with

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 12
SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

evidence in the prosecution history.  *Festo II*, 344 F.3d at 1366-67.  Because there is nothing in the prosecution history here suggesting that the amendment to add "integrally formed" was done for any reason other than patentability, the presumption cannot be rebutted.

Once prosecution history estoppel applies, it is presumed "that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation," with the result that the patentee is barred "from relying on the doctrine of equivalents for the accused element." *Festo II*, 344 F.3d at 1367.  This surrender applies to any continuation patents containing the same narrowing element that stem from the patent in which the narrowing amendment was made.  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 981 (Fed. Cir. 1999), *cert. denied*, 529 U.S. 1066 (2000).  The patentee may rebut this presumption of surrender if he carries the burden of establishing one of three rebuttal criteria.  *Festo II*, 344 F.3d at 1367.

BMS cannot establish any of these three rebuttal criteria and therefore is barred from relying on the doctrine of equivalents for the "integrally formed" claim element. BMS cannot establish the first rebuttal criterion, *Festo II*, 344 F.3d at 1369, because it cannot show that the alleged equivalent – a lower non-wood portion that is detachably joined to the wooden upper portion of the side jamb – was unforeseeable at the time of the narrowing amendment.  As Trinity Glass showed in its previous motion for summary judgment, a detachably joined lower side jamb portion was well-known in the prior art at the time of this amendment, being found in at least five prior art references, *see* Renewed Motion for Summary Judgment of Invalidity at 11-19, and thus was foreseeable.  "[I]f the

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1   alleged equivalent were known in the prior art in the field of the invention, it certainly

2   should have been foreseeable at the time of the amendment."  *Festo II*, 344 F.3d at 1369.

3         The presence in the prior art of the alleged equivalent also bars BMS from

4   establishing the third criterion for rebutting the presumption of surrender of equivalents –

5   "'some other reason suggesting that the patentee could not reasonably be expected to have

6   described the insubstantial substitute in question,'" *Festo II*, 344 F.3d at 1370 (quoting

7   *Festo I*, 535 U.S. at 741) – because "a patentee may not rely on the third rebuttal criterion

8   if the alleged equivalent is in the prior art." *Festo II*, 344 F.3d at 1370.

9         Finally, BMS cannot carry the burden of establishing the second criterion for

10  rebutting the presumption of complete surrender of equivalents: "that 'the rationale

11  underlying the narrowing amendment [bore] no more than a tangential relation to the

12  equivalent in question,'"  *Festo II*, 344 F.3d at 1369 (quoting *Festo I*, 535 U.S. at 740).

13  Establishing this rebuttal criterion must be done solely from the prosecution history record,

14  *id.* at 1370, and nothing in the prosecution history record of the '943 or '209 patents

15  supports this criterion.

16        Again, the *K-2* case is instructive.  The patentee there amended the claims to add

17  the "permanently affixed" limitation to avoid the prior art, which included a removable

18  connection between two parts.  The Federal Circuit held that prosecution history estoppel

19  precluded the plaintiff from asserting that a removable screw was equivalent to the

20  "permanently affixed" claim limitation.  The public notice rationale applied with equal

21  force to the public record created during patent prosecution:  "[T]he patentee, during

22  prosecution, made amendments and statements that would lead a reasonable competitor to

23  objectively conclude that the subject matter of removable screw attachments was

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 14

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

relinquished." *K-2*, 191 F.3d at 1369.  The Court had "no trouble concluding that the doctrine of equivalents cannot allow the '466 patent's 'permanently affixed' limitation to expand to cover the accused device's removable screw." *Id.* at 1368.

As in *K-2,* prosecution history estoppel bars BMS from relying on the doctrine of equivalents for the "integrally formed" claim element.

> **4.     There Can Be No Infringement Under the Doctrine of Equivalents Because the One-Piece Side Jamb and Detachable Sill Key Are Not Insubstantial Differences from the "Upper and Lower Portions" and "Integrally Formed" Claim Limitations.**

Even if the doctrine of equivalents is applied here (and it should not be because it is precluded by the prior art, the all elements rule, and prosecution history estoppel), there can be no infringement under the doctrine of equivalents because the single-piece wooden side jamb and the detachably joined sill key (if it is deemed a "lower portion" of the side jamb) are not insubstantial differences from the "side jambs having upper and lower portions" and "integrally formed" limitations required by Claim 1 of the '209 patent.  The doctrine of equivalents only protects against those who make "'unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim and hence outside the reach of law.'" *Festo,* 535 U.S. at 732-33 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950)).

Infringement under the doctrine of equivalents turns on whether the differences between the claim limitation and the element of the accused device are merely "insubstantial."  One test for insubstantiality of the differences is whether the element in the accused device "performs substantially the same function in substantially the same way to obtain substantially the same result as the claimed element." *Upjohn Co. v. Mova*

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 15

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    *Pharmaceutical Corp.*, 225 F.3d 1306, 1309 (Fed. Cir. 2000) (citing *Graver Tank*, 338

2    U.S. at 608).

3          Here, these tests are not met.  The one-piece wooden side jambs of Trinity Glass's

4    fiberglass exterior door system do not perform the same function as the "side jambs having

5    upper and lower portions" of Claim 1, because the wooden side jambs do not have a

6    weather-resistant lower portion, as the two-part side jamb of Claim 1 does.  Because the

7    wooden side jambs do not perform the same function, there is no need to consider the way

8    in which that function is not performed.  Finally, the result that the one-piece wooden side

9    jambs achieve is different, since the wooden side jambs themselves are not weather

10   resistant, unlike the two-piece side jambs of the '209 Patent.

11         Similarly, if the detachable sill key is deemed to be the lower portion of the side

12   jamb in Trinity Glass's product, there is no equivalence.  First, the sill key and side jamb

13   may perform the same weather-resistant function as the "integrally formed" side jamb of

14   Claim 1, but they also perform an additional function, because they can be disassembled

15   without affecting the integrity of either the wooden side jamb or the sill key.  Second, even

16   if the Trinity Glass sill key plus side jamb are found to perform the same function as the

17   "integrally formed" side jamb of Claim 1, the Trinity Glass invention performs that

18   function in a different way, using pieces that are detachably joined rather than ones that are

19   permanently interconnected and that cannot be disassembled without destroying their

20   integrity.  Finally, the result that the Trinity Glass sill key plus side jamb assembly

21   achieves is different.  Because the sill key and wooden side jamb are only screwed together

22   in the Trinity Glass product and are not permanently connected together, they do not form

23   a seal that will, in all cases, prevent the passage of moisture into the wooden side jamb.

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 16
SEA 1674829v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150  ·  Fax: (206) 628-7699

1   Water that reaches the joint between the sill key and wooden side jamb can enter the joint

2   via capillary action.  Sibbett Decl., ¶ 11.  An integrally formed two-piece side jamb, such

3   as the side jamb with a glued finger joint described in the '209 Patent, would not allow

4   water to enter the joint between the upper and lower portions.  *Id.*

5           No reasonable jury could find that the one-piece wooden side jamb and the

6   detachably joined sill key and wooden side jamb of the Trinity Glass product are merely

7   insubstantial differences from either the "side jambs having upper and lower portions" or

8   "integrally formed" limitations required by Claim 1 of the '209 patent.  Even if the

9   doctrine of equivalents applies notwithstanding the bars presented by the prior art, the all

10  elements rule, and prosecution history estoppel, there can be no infringement under the

11  doctrine of equivalents.

12                          **III.    CONCLUSION**

13          For the foregoing reasons, the Court should grant this motion for summary

14  judgment and enter a judgment (1) declaring that Trinity Glass's fiberglass exterior door

15  system does not infringe Claim 2 of the '209 patent and (2) dismissing BMS's

16  counterclaims with prejudice.

17

18

19

20

21

22

23

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 17
SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    DATED this 4th day of August, 2005.

2                                          Davis Wright Tremaine LLP
3                                          Attorneys for Trinity Glass International, Inc.

4

5                                          By s/Stuart R. Dunwoody
                                                Stuart R. Dunwoody
6                                               WSBA #13948

7                                               2600 Century Square
                                                1501 Fourth Avenue
8                                               Seattle, WA 98101-1688
                                                Telephone: (206) 628-7649
9                                               Fax: (206) 903-3849
                                                Email: stuartdunwoody@dwt.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 18
SEA 1674828v1 48522-29

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2005, I caused to be filed electronically with the court using the CM/ECF system, which will send notification of such filing, and I served true and correct copies of the following documents by the method indicated below and addressed as follows:

Motion for Summary Judgment of Noninfringement
Declaration of Peter Sibbett
[Proposed] Order Granting Plaintiff's Motion for Summary of Noninfringement
Certificate of Service

Timothy L. Ashcraft
Williams Kastner & Gibbs
1301 A Street, Suite 900
Tacoma, WA 98401-1157
Tel:  (253) 593-5620
Fax:  (253) 593-5625
E-mail:  tashcraft@wkg.com

_____ U.S. Mail
\_\_\_\_\_ Hand Delivery
_____ Overnight Mail
_____ Facsimile
\_\_\_x\_\_ CM/ECF Notification

F. Michael Speed
Michael Stonebrook
Jeffrey S. Standley
James L. Kwak
Standley Law Group
495 Metro Place South, Suite 210
Dublin, OH 43017-5319
Tel:  (614) 792-5555
Fax:  (614) 792-5536
E-mail:  mspeed@standleyllp.com
mstonebrook@standleyllp.com
jstandley@standleyllp.com
jkwak@standleyllp.com

_____ U.S. Mail
_____ Hand Delivery
\_\_\_\_\_ Overnight Mail
_____ Facsimile
\_\_\_x\_\_ CM/ECF Notification

DATED this 4th day of August, 2005.

s/Marilyn N. Boyd
Marilyn N. Boyd

MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT (C04-5330 RJB) — 19
SEA 1674828v1 48522-29

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699